OPINION OF THE COURT
Jack M. Battaglia, J.
In her verified complaint, plaintiff Georgia Darling seeks a declaration that she is the sole owner of a cooperative apartment at 2525 Nostrand Avenue, Brooklyn, held jointly since September 2, 1986 with her former husband, defendant Rupert Darling; and a protective order and injunction precluding execu- . tian against the property of a judgment obtained by defendant Valerie Malcolm on June 8, 1995 against Mr. Darling, now in excess of $3.7 million.
Plaintiff Georgia Darling and defendant Rupert Darling were married on July 5, 1980. They separated by the end of 1985, having produced two children. The following year, Ms. Darling located the cooperative apartment at 2525 Nostrand Avenue, “but did not have the proper credit to obtain acquisition financing from mortgage companies.” (Affidavit in support of summary judgment 11 4.) She “asked [her] estranged husband to help [her] out by lending his name to the Coop title and loan *345 documents, so that [she] would be approved to obtain financing, and he agreed to do so.” {Id. If 5.) On Mr. Darling’s agreement, “title to the coop” was taken in both names, “solely as an accommodation” to Ms. Darling; and “[u]nder the requirements of the mortgage company, [they] also both executed a proprietary lease.” {Id. If 6.)
According to Ms. Darling, her “husband never lived in the Coop, got no money from the loan for purchasing it, paid none of his own money for the purchase, and never paid back any money to the mortgage company.” {Id. 1Í 8.) “Over all these many years,” Ms. Darling “paid for all of the maintenance and mortgage payments on [the] Coop.” {Id. 1f 14.)
Copies of a stock certificate dated September 2, 1986 representing 230 shares of 2525 Nostrand Owners Corporation, issued to Georgia Darling and Rupert Darling “As Joint Tenants WROS,” and a proprietary lease bearing the same date, signed by Mr. and Ms. Darling, are part of the record on this motion. Also included is a copy of the closing statement, indicating that Anchor Savings Bank was the mortgage lender.
During the period of the Darlings’ marriage, Mr. Darling and defendant Valerie Malcolm became involved in a business relationship, and, according to Ms. Darling, eventually a romantic relationship. (Affidavit in further support of summary judgment 1N 5, 6, 8.) As a result of an alleged attack on April 15, 1991, Mr. Darling was tried for attempted murder of Ms. Malcolm and related crimes, but was acquitted. A civil action followed in this court, and Ms. Malcolm obtained a judgment against Mr. Darling for $2 million that was entered on June 8, 1995. At present, in excess of $3.7 million is owed on the judgment.
With a judgment dated May 30, 2002 of the Honorable Gerald E Garson, the marriage between Ms. Darling and Mr. Darling was ordered dissolved, incorporating an oral stipulation of settlement entered into in open court on February 15, 2002. The judgment ordered and adjudged that “pursuant to the oral Stipulation,” Mr. Darling “shall transfer all of his right, title and interest in the cooperative apartment located at 2525 Nostrand Avenue” to Ms. Darling within 60 days, and “shall execute any and all documents required to effectuate the said transfer.” It was also ordered and adjudged that “pursuant to the oral Stipulation, except for the property specifically mentioned in the stipulation, any and all marital property has been previously divided between the parties to their mutual satisfaction.” A copy of the transcript of the February 15, 2002 *346 proceeding is provided on this motion. No mention is made of the judgment obtained by Ms. Malcolm against Mr. Darling in 1995.
On September 7, 2005, Mr. Darling filed a petition under chapter 7 of the Bankruptcy Code in the United States District Court, Eastern District of New York. Defendant Robert J. Musso, Esq. was appointed trustee. Mr. Darling’s debts were discharged on June 22, 2006, but, as will appear, Valerie Malcolm’s judgment remains enforceable.
According to Ms. Darling, a “closing” was scheduled, at some unspecified time, for the transfer of the shares and proprietary lease from Mr. Darling to Ms. Darling, but the cooperative corporation refused to permit the transfer because of the outstanding Malcolm judgment. (Affirmation in support of summary judgment If If 12, 13.)
This action followed, but Ms. Darling first sought an order mandating the transfer by moving under the index number for the divorce action (38744/00). In a decision by the Honorable Jeffrey S. Sunshine dated May 22, 2007, the motion was denied. Justice Sunshine concluded that “the issue of the transfer of the apartment shares is properly addressed in [this] action, which involves all the necessary parties.” This court may take judicial notice of the documents in the file on the divorce action. (See Rossbach v Rosenblum, 260 App Div 206, 210 [1st Dept 1940], affd 284 NY 745 [1940]; Chicago Tit. Ins. Co. v Mazula, 38 AD 3d 1114, 1115 [3d Dept 2007]; Matter of Department of Social Servs. v Cronin, 37 AD3d 463 [2d Dept 2007]; Matter of Khatibi v Weill, 8 AD3d 485, 485-486 [2d Dept 2004]; Schmidt v Magnetic Head Corp., 97 AD2d 151, 158 n 3 [2d Dept 1983].) Indeed, because the divorce action and this action are related, Justice Sunshine’s findings might be deemed “law of the case.” (See Matter of Dalmolen v Elmira Coll., 279 AD2d 929, 932 [3d Dept 2001]; H.R. Neumann Assoc, v New Eagle, Inc., 6 Misc 3d 1027[A], 2005 NY Slip Op 50217[U], *5 [Civ Ct, Kings County 2005].)
Plaintiff now moves for summary judgment pursuant to CPLR 3212 “on all causes of action set forth in her complaint.” Plaintiff has previously moved twice for the same relief. In an order dated December 17, 2007, the Honorable Gloria M. Dabiri denied the motion “without prejudice and with leave to renew upon the completion of discovery.” Also, in an order dated July 20, 2007, Justice Dabiri preliminarily enjoined “Defendant,” presumably Ms. Malcolm, “from enforcing perfecting or assert *347 ing any lien against Coop Stock and lease at 2525 Nostrand Avenue No. 3B Brooklyn NY until 9/21/07.” Justice Dabiri’s December 17, 2007 order states that “the temporary restraining order, enjoining Malcolm from taking an action to create, perfect or enforce a lien upon the Co-op, is continued.”
As permitted by Justice Dabiri’s December 17, 2007 order, plaintiff moved again for summary judgment before this court. In a decision and order dated September 2, 2008, this court denied the motion, but granted leave to renew within 60 days. This renewal was brought on by order to show cause dated September 4, 2008, which included a stay against defendant Malcolm “from issuing any execution or taking any other action to create, perfect or enforce any lien upon the Coop Interest.”
Defendants Rupert Darling and Robert J. Musso, Esq., the chapter 7 trustee, and the attorney for defendant 2525 Nostrand Owners Corporation have each apparently signed (there is no notarization) an admission of service and consent to relief, in which the signer purports to “consent to the relief requested in the said Order to Show Cause.” Defendant Malcolm opposes.
Plaintiff Darling’s legal argument on her motion proceeds from three general contentions: first, “The Prior Judgment of Divorce of This Court Effected a Transfer of All Beneficial Interest in the Coop From Defendant, Rupert Darling to the Plaintiff” (affirmation in support of order to show cause 1ÍH 15-20); second, “The Judgment Alone Does Not Effect a Lien Upon Plaintiff’s Purely Legal Title in One Half of the Coop” (id. Uli 21-23); and third, “Defendant Malcolm’s Judgment Does Not Reach Plaintiff’s 100% Equitable Interest in the Coop” (id. ITU 24-33).
Plaintiff also argues that “Federal Bankruptcy Law Recognizes that Defendant, Rupert Darling Has No Beneficial Interest in the Coop” (id. 1T1T11-14). The argument is based solely on the consent of the trustee to the relief requested, without explanation by the trustee or copies of any documents from the bankruptcy proceeding that would establish any Bankruptcy Court determination of Ms. Darling’s interest in the property, or lack of interest of Mr. Darling. But in his decision denying Ms. Darling’s motion in the divorce action, Justice Sunshine notes that the trustee appeared on the motion and stated that Mr. Darling “had not scheduled any interest in the 2525 Nostrand apartment and contended that, even if Mr. Darling had done so, ‘the trustee would not consider the coop property of the bankruptcy estate for administration and liquidation.’ ” *348 (Decision, Hon. Jeffrey S. Sunshine, dated May 22, 2007, at 5; response of bankruptcy trustee dated Nov. 20, 2006, H 2.)
Justice Sunshine also found that Ms. Malcolm filed an adversary proceeding in Mr. Darling’s bankruptcy action, and obtained a ruling that her judgment against him “ ‘is not dischargeable in bankruptcy pursuant to Section 523 (a) (6) of the Bankruptcy Rules.’ ” (Id. at 4; order granting motion for summary judgment, Hon. Jerome Feller, dated May 24, 2006, exhibit 4, affirmation in opposition dated Nov. 30, 2006.)
Neither Ms. Darling nor Ms. Malcolm offers any reason why Justice Sunshine’s decision and the documents upon which it was made should not resolve any question that might otherwise have arisen because of Mr. Darling’s bankruptcy. On this motion, therefore, nothing about the bankruptcy precludes a determination that Ms. Darling is entitled to sole legal ownership of the apartment, or a determination that Ms. Malcolm may enforce her judgment against any interest Mr. Darling may have in the apartment. On the other hand, contrary to Ms. Darling’s suggestion, there is nothing about the bankruptcy that requires a determination in her favor on either of those issues.
The starting point for consideration of Ms. Darling’s motion must be the governing statute, which as will appear, is CPLR 5202 (a), titled “Judgment creditor’s right in personal property.” For purposes of article 52 of the CPLR, shares in a cooperative and the related proprietary lease are “personal property.” “[W]here priorities of judgment creditors are involved, the stock certificates and lease in the typical co-operative apartment transaction fit better . . . into the statutory framework governing personal property.” (Matter of State Tax Commn. v Shor, 43 NY2d 151, 154 [1977].)
“CPLR sections 5202 and 5203 lay out the steps that a judgment creditor must follow in order to obtain rights in a debtor’s real or personal property, respectively.” (Mussa v Ostashko, 468 F3d 99, 106 [2d Cir 2006].) “With respect to real property, save for a few exceptions . . . , a judgment does not give rise to a lien prior to entry, or ‘docketing,’ of the judgment with the county clerk in the county where the real property is located.” (Id.; see also CPLR 5203 [a].) “With respect to personal property, after entry of the judgment the creditor generally must ‘execute’ on the property by delivering the final order to the sheriff of the county in which the property is located.” (Id.; see also CPLR 5202 [a].) “Since a co-operative apartment leasehold, inseparable from co-operative shares, is not a chattel real for *349 purposes of CPLR 5203, [a judgment creditor does] not obtain a lien merely upon docketing its judgment.” (Matter of State Tax Commn. v Shor, 43 NY2d at 154.)
Plaintiff Darling asserts (without evidentiary support, it might be noted) that “no execution was ever issued prior to the Judgment of Divorce,” when the cooperative apartment leasehold and cooperative shares (collectively referred to hereinafter as the coop) “became wholly owned, beneficially by Plaintiff herein”; and that, therefore, “there can be no lien” on the Coop by reason of the Malcolm judgment.” (Affirmation in support of order to show cause 1Í 23.) Assuming for the moment, however, that the divorce judgment constituted a transfer from Mr. Darling to Ms. Darling of all of his interest in the coop, Ms. Malcolm’s failure to execute prior to the divorce judgment does not in itself necessarily deprive Ms. Malcolm of any rights with respect to the coop.
CPLR 5202 provides:
“(a) Execution creditor’s rights. Where a judgment creditor has delivered an execution to a sheriff, the judgment creditor’s rights in a debt owed to the judgment debtor or in an interest of the judgment debtor in personal property, against which debt or property the judgment may be enforced, are superior to the extent of the amount of the execution to the rights of any transferee of the debt or property, except:
“1. a transferee who acquired the debt or property for fair consideration before it was levied upon; or
“2. a transferee who acquired a debt or personal property not capable of delivery for fair consideration after it was levied upon without knowledge of the levy.”
Since there has been no levy, and the shares in the cooperative apartment are “capable of delivery” (see Aluminum Co. of Am. v Moskovitz, 1990 US Dist LEXIS 16467, *8 [SD NY 1990]), CPLR 5202 (a) (2) is inapplicable here.
CPLR 5202 (a) (1) is consistent with the Debtor and Creditor Law, which provides in section 273-a:
“Every conveyance made without fair consideration when the person making it is a defendant in an action for money damages or a judgment in such an action has been docketed against him, is fraudulent as to the plaintiff in that action without regard to *350 the actual intent of the defendant if, after final judgment for the plaintiff, the defendant fails to satisfy the judgment.”
As noted, plaintiff makes no showing that Ms. Malcolm has failed to execute on her judgment pursuant to CPLR 5230. In his decision on Ms. Darling’s motion before him, Justice Sunshine states that “around September 2006 . . . Ms. Malcolm’s attorney served a restraining notice, pursuant to CPLR 5232 (b), against the managing agent for 2525 Nostrand forbidding the agent from making any sale, assignment or transfer of Rupert Darling’s interest in the 2525 Nostrand apartment.” (Decision, Hon. Jeffrey S. Sunshine dated May 22, 2007, at 4.) Further, “Ms. Malcolm’s attorney alleges that he thereafter served an execution, dated November 8, 2006, on the Kings County Sheriffs Office against Mr. Darling’s one-half interest in the 2525 Nostrand apartment; however, service of that execution is disputed by Ms. Darling.” (Id.)
Justice Sunshine had before him a copy of an information subpoena with restraining notice dated October 30, 2006, directed to DSJ Management Corp., said to be the managing agent for 2525 Nostrand Owners Corporation. (Affirmation in opposition dated Nov. 30, 2006, 1Í1Í13, 18; exhibit 6.) He also had before him a copy of an execution against personal property of the judgment debtor dated November 8, 2006, directed to the Sheriff of Kings County, which describes the property upon which levy was to be made as “the one half interest owned by Rupert Darling in the shares of a certain cooperative apartment (3B) corporation [szc] known as 2525 Nostrand Owners Corporation.” (Affirmation in opposition dated Nov. 30, 2006, 111114, 18; exhibit 7.) Addressing plaintiffs motion in the light most favorable to Ms. Malcolm (see Jablonski v Rapalje, 14 AD3d 484, 487 [2d Dept 2005]), the court will proceed on the assumption that execution was indeed delivered pursuant to CPLR 5230.
Plaintiff makes no showing that, prior to the stipulation and settlement in the divorce action, Mr. Darling had no “actual interest” in the coop. (See Matter of Weismann v Robins, 191 AD 2d 497, 498 [2d Dept 1993]; see also Matter of National Enters., Inc. v Clermont Farm Corp., 46 AD 3d 1180, 1182 [3d Dept 2007]; Rossignol v Silvernail, 222 AD2d 939, 940 [3d Dept 1995]; Community Natl. Bank & Trust Co. of N.Y. v Statile, 94 AD2d 754, 754-755 [2d Dept 1983]; see also Wulff v Roseville Trust Co., 164 App Div 399, 404-405 [1st Dept 1914] [“Property which a debtor holds in trust for others ... is not subject to an *351 attachment issued against his property”]; Karaha Bodas Co., L.L.C. v Perusahaan Pertambangan Minyak Dan Gas Bumi Negara [“Pertamina”], 313 F3d 70, 92 [2d Cir 2002].) Such a showing, which might have been based upon an agreement between Ms. Darling and her husband when the coop was purchased and Ms. Darling’s subsequent payment of all maintenance and loan charges (see Rossignol v Silvernail, 222 AD2d at 940; Community Natl. Bank & Trust Co. of N.Y. v Statile, 94 AD2d at 754-755), would, in any event, have been complicated by the continuing spousal relationship, together with accretion of “marital property” (see Domestic Relations Law § 236 [B] [1] [c]) and the obligations of both Ms. Darling and her husband for the support of their minor children.
Also with respect to the purchase of the coop, Ms. Malcolm contends that Ms. Darling is disqualified from receiving any equitable relief from this court because “she admits to participating in a fraud against both the lending bank as well as the cooperative board.” (Affirmation in opposition, dated Oct. 8, 2008, 1f 4; affirmation in opposition, dated Oct. 16, 2007, H1Í 5, 6.) But
“the equitable rule or maxim that ‘he who comes into equity must come with clean hands’ ... is never used unless the plaintiff is guilty of immoral, unconscionable conduct and even then only ‘when the conduct relied on is directly related to the subject matter in litigation and the party seeking to invoke the doctrine was injured by such conduct.’ ” (National Distillers & Chem. Corp. v Seyopp Corp., 17 NY2d 12,15-16 [1966], quoting Weiss v Mayflower Doughnut Corp., 1 NY2d 310, 316 [1956]; see also Columbo v Columbo, 50 AD3d 617, 619 [2d Dept 2008].)
Here, even assuming plaintiffs conduct in the purchase transaction could be found “immoral [or] unconscionable” (see id.), there is no allegation of injury to Ms. Malcolm as a result (see Unger v Leviton, 25 AD3d 689, 690 [2d Dept 2006]). In any event, plaintiff submits evidence that she is not in default on her obligations to the corporation or the lender, and the corporation is apparently quite willing to allow the transfer of the shares and lease from Mr. Darling to her.
Plaintiff argues that “[i]t has long been the law in New York that from the moment an executory contract of sale is completed, equitable title passes from vendor to vendee, which equitable title is transformed into full legal title upon the subsequent *352 delivery of title documents,” citing Beckrich v City of N. Tonawanda (171 NY 292 [1902]). (Affirmation in support of order to show cause If 15.) Plaintiff then argues that the “stipulation made in open court between the divorcing parties, Plaintiff and Defendant, Rupert Darling, wherein and whereby the Coop was to be transferred from Defendant, Rupert Darling to the Plaintiff . . . has the binding effect of a contract and must be strictly enforced,” citing Ferrante v Wold (36 AD3d 585 [2d Dept 2007]) and Furgang v Epstein (106 AD2d 609 [2d Dept 1984]). (Affirmation in opposition to order to show cause 1118.) The result, according to plaintiff, was a transfer to her of full equitable title to the coop when the stipulation was made, sufficient to constitute a transfer of Mr. Darling’s interest before Ms. Malcolm obtained her lien on the property by delivery of execution of her judgment. (Id. U 20.)
Although these arguments are not without persuasiveness, they are not fully successful. Although “[ejxecution of a land sale contract provides the purchaser with equitable title to the propertyt, i]t creates privity and duties between the purchaser and the seller but not between an equitable title holder and third parties.” (See Kendle v Town of Amsterdam, 36 AD3d 985, 986 [3d Dept 2007].) The coop, moreover, is not “land” but personalty; were it “land,” Ms. Malcolm’s judgment would have given her priority over a subsequent transferee or judgment creditor as of the date it was docketed. (See CPLR 5203 [a].) And, finally, the arguments do not account for the spousal relationship.
This court is aware of only one decision addressing the right of a judgment creditor to execute on marital property distributed to a spouse in a divorce action, Musso v Ostashko (468 F3d 99 [2d Cir 2006]). In that bankruptcy proceeding commenced against the former husband, the court stated the issue for decision: “When marital assets have been awarded to the wife in a state court matrimonial proceeding, are those assets nevertheless part of the husband’s bankruptcy estate if a Chapter 7 petition is filed after the state court’s decision but before the state court judgment is entered?” (See id. at 102.) The court held that “[b]ecause [the former wife’s] interest in the property did not completely vest until after the involuntary petition was filed the property is part of the bankruptcy estate.” (See id. at 108.)
The Bankruptcy Code “gives the trustee in bankruptcy the status of a hypothetical judgment lien creditor, . . . armed with a judgment and with all the power that state law confers on *353 [an] ideal lien creditor.” (See id. at 104-105.) “New York adheres to the bright line rule that the priority of judgment creditors is determined on the basis of the order in which judgments are docketed or executed.” (Id. at 102.)
“Marital property” is defined in the Domestic Relations Law as “all property acquired by either or both spouses during the marriage and before the execution of the separation agreement or the commencement of a matrimonial action, regardless of the form in which title is held.” (Domestic Relations Law § 236 [B] [1] [c].) “[N]either spouse obtains an equitable interest in property held by the other merely because the property falls within the definition of ‘marital property.’ ” (Mussa v Ostashko, 468 F3d at 105.) “A spouse without legal title has no interest in marital property prior to obtaining a judgment creating such an interest.” (Id. at 105-106.) “[A]n equitable distribution award is similar to the imposition of a constructive trust: It is a remedy available to the courts to ensure that traditional title principles do not prevent the courts from achieving equity between the parties to an action.” (Id. at 105.)
In its description of New York’s law on marital property and equitable distribution, the Second Circuit relies upon a concurring opinion in the Second Department’s decision in Leibowits v Leibowits (93 AD2d 535, 538 [2d Dept 1983, O’Connor, J., concurring]; see Musso v Ostashko, 468 F3d at 105). Leibowits concerned the scope of section 234 of the Domestic Relations Law, which provides authority for the issuance of an order regarding marital property during the pendency of a divorce action. The concurring opinion does not appear to have been subsequently adopted by any state court as stating the law, but it has been cited with approval, and principles it articulates have been recognized. (See Goldman v Goldman, 95 NY2d 120, 123 [2000]; McDermott v McDermott, 119 AD2d 370, 379 [2d Dept 1986]; Stewart v Stewart, 118 AD2d 455, 457-458 [1st Dept 1986].)
Treating “the spouse, like a judgment creditor, [as] seeking] to enforce an equitable remedy ordered in the judgment” of divorce (see Musso v Ostashko, 468 F3d at 106), the Second Circuit then holds that “[a] mere judicial declaration of equitable distribution, without entry, cannot give a spouse an interest in property superior to that of a creditor . . . holding a valid judgment lien” (see id. at 107). Otherwise, “a perfected judgment hen might be defeated by an unentered equitable distribution award,” and “blur the bright line that New York has created with sections 5202 and 5203 of the CPLR.” (See id. at 106-107.) “Rights in *354 equitable distribution, like judgment liens, vest no earlier than entry of the judgment by which they are created.” (Id. at 107.) “[E]ntry of the judgment is critical, under New York law, to cementing the spouse’s interest in the property.” (Id. at 107-108.)
Our case is different from Musso v Ostashko because Ms. Malcolm did not have a “perfected judgment lien” before entry of the divorce judgment that gave Ms. Darling full ownership of the coop. There is no dispute that Ms. Malcolm did not execute on her judgment until after entry of the divorce judgment. The question for us is the respective rights of the parties now that Ms. Malcolm has executed on her judgment, when there is no evidence that Ms. Darling has ever executed on hers. If Ms. Darling is treated as a judgment creditor, rather than a transferee, for purposes of CPLR article 52, it seems quite clear that any interest in the coop she was given by the divorce judgment would fall before Ms. Malcolm’s executed judgment. (See CPLR 5234 [b].) This court is not bound by a federal court’s interpretation of New York law (see 20 Am Jur 2d, Courts § 146), and a federal court’s determination of the rights of a trustee in bankruptcy do not determine the rights of other claimants to property not part of a bankruptcy estate.
To this court, there is a material difference between the usual judgment creditor, seeking to collect a money judgment from any property owned by the judgment debtor, and the distributee under a divorce judgment, seeking possession of specific property awarded from the marital estate. The Second Circuit recognized that “an equitable distribution award is similar to the imposition of a constructive trust” (see Musso v Ostashko, 468 F3d at 105), which is an equitable remedy that “directs specific performance, . . . imposing] a duty on the owner to convey the property — title as well as possession” (see Leibowits v Leibowits, 93 AD2d at 554 [O’Connor, J., concurring]). And, as has been already noted, a judgment creditor cannot generally reach property held by the judgment debtor pursuant to a constructive trust.
Prior to the entry of judgment, at the earliest, the judgment creditor has no interest in the property of the judgment debtor. (This assumes no attachment pursuant to CPLR article 62 or postdecision or verdict restraint under CPLR 5229.) “During the marital property phase, ... a spouse’s interest is . . . inchoate” but “protectable against unwarranted dissipation.” (See McDermott v McDermott, 119 AD2d at 379.) The spouse’s *355 “inchoate rights become actual ownership interests by virtue of [the] equitable distribution judgment[ ].” (See id.) The judgment creditor’s interest becomes, at most, a lien upon docketing.
Here, moreover, the distribution of marital property was made pursuant to a stipulation in open court, enforceable as a contract. (See Shockome v Shockome, 53 AD3d 610 [2d Dept 2008]; Harrington v Harrington, 103 AD2d 356, 357 [2d Dept 1984].) Although not determinative, and not present in all cases, the contractual source of the rights to particular property is far removed from the manner in which the judgment creditor obtains its interest in property, and is more akin to transfer.
Whatever might be said of judgments generally, New York law seems quite clear that entry of the judgment is not always necessary to establish rights to marital property determined by court decision or stipulation. For example, where one of the spouses dies after decision or stipulation, but before entry,
“[i]f at the time of the decedent’s death nothing remains to be done in the divorce action except enter a judgment, the parties’ substantive rights should be determined as if the judgment of divorce had been entered immediately as of the time nothing remained to be done except enter a judgment.” (See Lewis v Green, 295 AD2d 250, 251 [1st Dept 2002]; see also Zuckerman v Zuckerman, 34 AD3d 403, 403 [1st Dept 2006].)
Where “all outstanding issues ha[ye] been resolved,” the entry of the divorce judgment pursuant to a stipulation of settlement is “a mere ministerial act.” (See Sloboda v Sloboda, 24 AD3d 533, 534 [2d Dept 2005].)
Treating the distributee under a divorce judgment as a judgment creditor rather than as a transferee, as the Second Circuit does, has practical, unfair consequences. The spouse who is awarded a marital home that is real property or a condominium would need not execute on the judgment to obtain rights to the property as against a judgment creditor (see CPLR 5203 [a]), but the spouse who is awarded a marital home that is a cooperative apartment would need to execute, or risk losing the property to even a later judgment creditor who executes first (see CPLR 5202 [a]; 5234 [b]). Such disparate results defy the reasonable expectations of the spouses, and probably the matrimonial court as well.
The court is aware of nothing to suggest that the Legislature would have intended such disparate results under either the *356 Equitable Distribution Law (L 1980, ch 281) or CPLR article 52. To the extent that article 52 rules are intended “to notify potential creditors and other interested parties of the existing lien” (see Musso v Ostashko, 468 F3d at 106), the recently dissolved marital relationship would appear sufficient for the purpose as to any diligent interested party, particularly when accompanied by the nature of the property, such as a marital home, or possession by the benefitted spouse, or both.
If, as the court holds, the equitable distribution award under a divorce judgment should be deemed to constitute the benefit-ted spouse a transferee as to the marital property distributed, rather than a judgment creditor, for purposes of CPLR article 52, the time of the transfer must also be determined. Specifically, will the transfer be deemed made when the divorce judgment is entered, or only when the titleholder signs any documents and completes such other steps as may be necessary to give legal title to the benefitted spouse? (In this case, for example, signature and any other steps would not take place until after execution on the judgment by Ms. Malcolm.) The reasons for treating the benefitted spouse as a transferee support as well the conclusion that, for purposes of article 52, the transfer should be deemed to take place, at the latest, when the divorce judgment is entered. Particularly where, as here, that judgment includes an order to the titleholder to do whatever is necessary to accomplish the transfer of legal title, any further step is “a ministerial act and a mere formality.” (See Sood v Sood, 19 Misc 3d 971, 973 [Sup Ct, NY County 2008].)
The result here is that, because Mr. Darling’s interest in the coop is deemed to have been transferred to Ms. Darling well before Ms. Malcolm delivered execution on her judgment against Mr. Darling, the coop cannot be reached by Ms. Malcolm under article 52. Since this result does not appear to be affected by the restraints that have been imposed upon Ms. Malcolm during the pendency of this action, and since Ms. Malcolm does not question the court’s authority to impose them (see CPLR 5240), they will not be addressed. Nor will the court discuss any issues relating to the restraining notice (see CPLR 5222) or return on execution (see CPLR 5230 [c]) which have not been raised by either party. (See Matter of International Ribbon Mills [Arjan Ribbons], 36 NY2d 121 [1975].)
The inquiry is not at an end, however. Because the transfer to Ms. Darling was made after Ms. Malcolm docketed her judgment against Mr. Darling, and the judgment remains unsatis *357 fled, the transfer may be declared a fraudulent conveyance if it was made without “fair consideration.” (See Debtor and Creditor Law § 273-a; see also Fischer v Sadov Realty Corp., 34 AD3d 632, 633 [2d Dept 2006].) The judgment creditor need not “[h]ave the conveyance set aside or obligation annulled,” but may rather “[disregard the conveyance and attach or levy execution upon the property conveyed.” (See Debtor and Creditor Law § 278 [1] [a], [b].) Ms. Malcolm asserts that the transfer to Ms. Darling is such a fraudulent conveyance. (Affirmation in opposition, dated Oct. 16, 2007,1i 14.)
“Fair consideration” is somewhat defined in section 272 of the Debtor and Creditor Law:
“Fair consideration is given for property, or obligation.
“a. When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or
“b. When such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained.”
To be noted is that an “antecedent debt” may qualify as fair consideration, and that “good faith” is incorporated into the definition (see Ede v Ede, 193 AD2d 940, 941-942 [3d Dept 1993]).
“Good faith is an elusive concept in New York’s constructive fraud statute.” (In re Sharp Inti. Corp., 403 F3d 43, 54 [2d Cir 2005].) It seems reasonably clear, however, that neither Mr. Darling’s preferring to settle his marital obligations to Ms. Darling rather than paying the judgment owed to Ms. Malcolm, nor Ms. Darling’s knowledge of the preference, constitutes a lack of “good faith.” (See id. at 54-55.) Moreover, the coop was acquired as marital property before Ms. Malcolm received her judgment, and there is no dispute that Ms. Darling has made all payments related to its ownership.
Generally, the burden of proof on the elements of a fraudulent conveyance, including the lack of fair consideration, is on the party challenging the conveyance. (See Joslin v Lopez, 309 AD2d 837, 838 [2d Dept 2003].) “In an intrafamily transfer,” however, “the burden of demonstrating the fairness of the consideration is on the transferee.” (See Domino Media, Inc. v *358 Kranis, 9 F Supp 2d 374, 387 [SD NY 1998], affd 173 F3d 843 [2d Cir 1999].) The shift appears to be based upon the family members’ “exclusive control” of the facts relating to the transaction. (See Neshewat v Salem, 365 F Supp 2d 508, 520 [SD NY 2005], affd 194 Fed Appx 24 [2006].)
Transfers between spouses have not fared well when examined for “fair consideration.” (See Joslin v Lopez, 309 AD2d at 838-839; Rampello v Cioffi, 282 AD2d 442, 443 [2d Dept 2001]; Rossignol v Silvernail, 222 AD2d at 940; Durrant v Kelly, 186 AD2d 237, 238 [2d Dept 1992]; Duckstein v Rosa, 118 AD2d 951, 952 [3d Dept 1986]; Kleinfeld v Pedersen, 116 AD2d 970, 971 [4th Dept 1986]; Century Ctr. v Davis, 100 AD2d 564, 565 [2d Dept 1984]; Merman v Miller, 82 AD2d 826, 827 [2d Dept 1981]; see also Neshewat v Salem, 365 F Supp 2d at 519-521; but see Fischer v Sadov Realty Corp., 34 AD3d at 633.)
Although the incorporation of a transfer between spouses into a divorce decree or Family Court order does not immunize that transfer from challenge as a fraudulent conveyance, when so incorporated “fair consideration” for the transfer has been found in “legally cognizable aspects of [the transferor’s] child support obligations” (see First Fed. Sav. & Loan Assn, of Rochester v Kasmer, 140 AD2d 826, 828 [3d Dept 1988]), and in an “agree[ment] to “[forgo]” any claim for maintenance in return for the conveyance” (see In re Fair, 142 BR 628, 631 [ED NY 1992]).
As previously noted, the Darlings’ divorce judgment “ordered and adjudged” that, except for the coop, “any and all marital property [had] been previously divided between the parties to their mutual satisfaction.” In addition, the judgment “ordered and adjudged” that “neither party shall have any claim against, or interest in, the property of the other”; “the parties waive any claim for spousal support and/or maintenance as against the other party both now and in the future”; and that “the parties waive any claim for counsel fees with respect to [the] proceeding as against the other party both now and in the future.”
Where the transfer has not been incorporated into a divorce decree, more will be required about the financial circumstances of the parties, the value of the transferor’s share in the property transferred, and the nature and amount of the potential claims waived by the transferee. (See Century Ctr. v Davis, 100 AD2d at 565; Merman v Miller, 86 AD2d at 827.) But where the transfer is incorporated into a divorce decree, provisions such as appear in the Darlings’ divorce judg *359 xnent are sufficient to establish prima facie that the transfer was made for “fair consideration.” To require more would likely result in additional delay and expense in a great many divorce proceedings in which there is no doubt about the value of consideration and no possibility of a third-party claim.
Ms. Malcolm points to nothing other than the existence of her judgment and the fact of the transfer to raise a triable issue on her contention that the transfer was a fraudulent conveyance. She had available to her the information filed by Mr. Darling in his bankruptcy proceeding, in which she participated to establish that her judgment was not dischargeable. She was given the opportunity of full disclosure here, but failed to even depose Ms. Darling. No triable issue has been raised.
The court notes that plaintiff has made no prima facie showing that she has a cause of action against defendant 2525 Nostrand Owners Corporation, or that she is entitled to injunctive relief against it.
Plaintiff Georgia Darling’s motion is, therefore, granted to the extent that she is entitled to a judgment declaring that the shares and proprietary lease with respect to apartment 3B at 2525 Nostrand Avenue are not subject to levy pursuant to defendant Valerie Malcolm’s judgment against defendant Rupert Darling; and prohibiting the Sheriff of Kings County from taking any action to levy upon the shares and proprietary lease pursuant to an execution issued by or for Ms. Malcolm. This order, and any judgment entered pursuant to it, shall be without prejudice to any right or claim plaintiff may or will have against defendant 2525 Nostrand Owners Corporation for any refusal or failure to recognize a transfer of the shares and proprietary lease to plaintiff.