**Robert J. MUSSO, Petitioner–Appellant,**

v.

**Tanya OSTASHKO, Defendant–Appellee.**

No. 05–6935 BK.

United States Court of Appeals, Second Circuit.

Argued: Aug. 9, 2006.

Decided: Nov. 6, 2006.

those assets nevertheless part of the husband's bankruptcy estate if a Chapter 7 petition is filed after the state court's decision but before the state court judgment is entered? The bankruptcy court ruled that, in New York, an equitable right to marital property does not arise until entry of the judgment awarding equitable distribution and, thus, the property must be included in the estate. On appeal, the district court reversed, finding that the entry of the state court judgment is "ministerial" and, thus, the rights of the wife, Tanya Ostashko, vested upon rendering of the state court's "Decision After Inquest."

We now vacate the decision of the district court. Four relevant premises require this result. First, under New York law an equitable distribution award is a remedy, and the enforcement of that remedy is no different than the enforcement of any other judgment. Second, New York adheres to the bright line rule that the priority of judgment creditors is determined on the basis of the order in which judgments are docketed or executed. Third, 11 U.S.C. § 544—the so-called "strong arm" provision of the Bankruptcy Code—gives the bankruptcy trustee the rights of a hypothetical perfected judgment lien creditor as of the petition date. Finally, while the Decision After Inquest determined the rights to the marital assets as between husband and wife, the decision did not purport to determine the rights to the assets as between Tanya Ostashko and all other judgment lien creditors. Based upon these considerations, and the undisputed fact that the matrimonial judgment was docketed after the filing of the Chapter 7 petition, we hold that the marital assets are part of the bankruptcy estate and subject to distribution in due course by the bankruptcy court.

Tanya and Vladimir Ostashko were married in Russia in 1992 and moved to the

Bruce Weiner, Rosenberg, Musso & Weiner, LLP, Brooklyn, New York, for Petitioner-Appellant.

David J. Doyaga, Doyaga & Schaefer, Brooklyn, New York, for Defendant-Appellee.

Before: B.D. PARKER, WESLEY and HALL, Circuit Judges.

PER CURIAM:

Despite the complicated procedural history of this case and its related state court proceedings, the issue before this Court is relatively straightforward: When marital assets have been awarded to the wife in a state court matrimonial proceeding, are

United States in 1994. That same year, Vladimir purchased a home on Staten Island in his name only with $400,000 in cash and a $400,000 mortgage from Green Point Bank. The couple separated in 1997. On January 15, 1998, Vladimir entered into a credit agreement with Informtechnika Bank ("Informtechnika") that provided him with an unsecured credit line of 5,900,-000 rubles (equivalent to approximately $900,000, at that time), and, in April 1998, he drew down on the credit line by 5,500,-000 rubles. Shortly thereafter, Vladimir defaulted on the loan payments, and Informtechnika sued in Supreme Court, New York County to collect on the debt. In March 1999, Vladimir and Informtechnika reached a settlement, whereby Informtechnika was given a consent judgment for $800,000, plus $10,000 in legal fees. Informtechnika then assigned this judgment to another Russian company, Zuritta–Teks.

In 1999, Tanya commenced an action in New York state court seeking to enjoin Informtechnika (later Zuritta–Teks) from enforcing the judgment and to avoid the judgment as a fraudulent conveyance. The case was later removed to federal court. The United States district court (Ross, J.) found that Vladimir intended to use the loan instrument to liquidate the value of the marital assets in the United States to the detriment of Tanya. The district court noted that Vladimir was one of Informtechnika's founders, served on its board of directors throughout most of the 1990s, and remained close friends with one of the directors and chairman of the bank at the time of the loan. In light of statements by Vladimir that Tanya "would not receive a single kopeck when the dust from the divorce settled," and the district court's finding that toward the end of 1997 and the beginning of 1998 Vladimir engaged in a wholesale liquidation of the marital assets to prevent Tanya from securing an interest in them, the district court found that "the loan was clearly the means by which Vladimir turned remaining marital assets into immediate cash." The district court further found that, while direct evidence of the bank's knowledge was lacking, "circumstantial evidence indicat[ed] that the bank was aware of Vladimir's intentions." In light of these findings, the district court held that the consent judgment was a constructively fraudulent conveyance.[1] *See Ostashko v. Ostashko,* No. 00–cv–7162, 2002 WL 32068357, at *29 (E.D.N.Y. Dec.12, 2002), *aff'd sub nom., Ostashko v. Zuritta–Teks,* 79 Fed.Appx. 492 (2d Cir.2003).

On March 3, 1998, Tanya Ostashko commenced a matrimonial proceeding in New York Supreme Court, Richmond County. Between December 1998 and May 1999, several decisions by the state court granted Tanya use and possession of various marital assets (including the marital home on Staten Island). The parties were also enjoined from transferring, encumbering, or in any other way disposing of property in which either party had an interest. In June 2002, the matrimonial action was removed from the calendar pending the disposition of the fraudulent conveyance action in federal court. Once that case concluded, the matrimonial action was restored to the state court calendar on January 23, 2003. On July 1, 2003, an inquest was held on the merits of the divorce, and on October 23, 2003, the state court issued a Decision After Inquest awarding Tanya 100 percent of the marital assets. In addition, the court awarded Tanya $211,093.72 for maintenance ar-

---

**1.** While the status of the consent judgment is relevant to the disposition of the bankruptcy estate, it does not impact our decision on the narrow issue before us today.

rears, real estate taxes, and other charges, and $135,000.00 for counsel fees.

On December 18, 2003, Zuritta–Teks filed an involuntary Chapter 7 bankruptcy petition against Vladimir. At that time, the final judgment of divorce was neither signed nor entered. At a hearing on April 20, 2004, the bankruptcy court modified the automatic stay to permit Tanya to seek entry of a final judgment in the matrimonial action, with that relief to become effective after the appointment of a trustee so that the trustee could determine whether to pursue an appeal of the state court judgment. Before the bankruptcy court entered its order modifying the automatic stay, the state court judgment was signed and entered. The bankruptcy court then modified the automatic stay *nunc pro tunc.*

On May 20, 2004, the bankruptcy trustee (the "Trustee") commenced an adversary proceeding in the bankruptcy court. The complaint sought control of Vladimir's property and avoidance of any interest by Tanya in that property. In her answer on June 21, 2004, Tanya made cross- and counterclaims against the debtor and the Trustee seeking, *inter alia,* a declaration that the marital assets were not part of Vladimir's bankruptcy estate. On December 6, 2004, Tanya filed a motion for summary judgment seeking declaration that the marital assets were not property of the bankruptcy estate by operation of the Decision After Inquest, and that she was entitled to enforce the state court judgment and take title to the marital assets. In a comprehensive opinion, the bankruptcy court denied the motion; Tanya appealed. The district court reversed and directed the bankruptcy court to enter judgment in favor of Tanya. *Ostashko v. Ostashko,* 333 B.R. 625, 636 (E.D.N.Y.2005). This appeal followed.

This case involves the intersection of three bodies of law: Federal Bankruptcy Law, New York Domestic Relations Law, and New York Law on the Enforcement and Execution of Judgments. Each has a distinct role, but each must be understood in the context of the others when one partner to a marriage goes to the federal courthouse for bankruptcy relief.

■ Section 541 of the Bankruptcy Code provides that the commencement of a bankruptcy case creates an estate, to be comprised of "all legal and equitable interests" of the debtor, "wherever located and by whomever held." 11 U.S.C. § 541(a). The scope of this section is broad, and is intended to maximize the amount of property available for distribution to creditors according to priorities established by the Code. The estate created by section 541 is protected from the piecemeal reach of creditors by section 362, which imposes an automatic stay on all actions and proceedings that may affect the debtor's property. *See* 11 U.S.C. § 362. "It is this central aggregation of property that promotes the effectuation of the fundamental purposes of the Bankruptcy Code: the breathing room given to a debtor that attempts to make a fresh start, and the equality of distribution of assets among similarly situated creditors ...." 5 COLLIER ON BANKRUPTCY ¶ 541.01 (15th ed. Rev. 2005).

■■ Section 544 of the Bankruptcy Code gives the trustee in bankruptcy the status of a hypothetical judgment lien creditor. 11 U.S.C. § 544(a)(1). The trustee hypothetically extends credit to the debtor at the time of filing and, at that moment, obtains a judicial lien on all property in which the debtor has any interest that could be reached by a creditor. The advantage of this status derives not from the Bankruptcy Code but, rather, from the relevant state law defining creditor rights. *See In re Kors, Inc.,* 819 F.2d 19, 22–23 (2d Cir.1987) ("Once the trustee has as-

sumed the status of a hypothetical lien creditor under § 544(a)(1), state law is used to determine what the lien creditor's priorities and rights are."); *In re Vienna Park Properties*, 976 F.2d 106, 115 (2d Cir.1992). Section 544(a)(1) thus puts the trustee in the position of an ideal lien creditor, armed with a judgment and with all the power that state law confers on such ideal creditors. *See Kors*, 819 F.2d at 23; *see also In re Halabi*, 184 F.3d 1335, 1337 (11th Cir.1999); *In re Hartman Paving, Inc.*, 745 F.2d 307, 311 (4th Cir.1984).

■■ Whether the debtor has a legal or equitable interest in property such that it becomes "property of the estate" under section 541 is determined by applicable state law. *Butner v. United States*, 440 U.S. 48, 54, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). Any property of the debtor upon which a judgment creditor might obtain a lien under state law flows to the bankruptcy estate. *See id.*; 11 U.S.C. § 544(a)(1). One such law governing Vladimir's property is New York's Domestic Relations Law.

■ Section 236 of the Domestic Relations Law provides that "all property acquired by either or both spouses during the marriage and before the execution of a separation agreement or the commencement of a matrimonial action, regardless of the form in which title is held" is marital property. N.Y. DOM. REL. L. § 236(B)(1)(c) (2003). The theory behind section 236 is that "marriage is an economic partnership and that, upon dissolution of the marriage, the tangible fruit of that partnership, the marital property, should be equitably divided between the parties." *Id.* at Practice Commentaries, C236B:4, 253. However, neither spouse obtains an equitable interest in property held by the other merely because the property falls within the definition of "marital property." *See In re Frederes*, 141 B.R. 289, 291–92 (Bankr.W.D.N.Y.1992); *In re Hilsen*, 100 B.R. 708, 711 (Bankr.S.D.N.Y.1989), *rev'd on other grounds*, 119 B.R. 435, 438 (S.D.N.Y.1990) (citing *Leibowits v. Leibowits*, 93 A.D.2d 535, 462 N.Y.S.2d 469, 478 (N.Y.App.Div.1983)). Nor do rights vest even upon the commencement of a matrimonial action. *See In re Hilsen*, 100 B.R. at 711. Section 236(B)(5)(a) provides that the court "shall determine the respective rights of the parties in their separate or marital property, and shall provide for the disposition thereof *in the final judgment.*" N.Y. DOM. REL. L. § 236(B)(5)(a) (emphasis added). "[A]t *no point prior to judgment* does [section 236] create any contingent or present vested interests, legal or equitable, by virtue of the parties' marital status or prior to a judgment dissolving their union." *Leibowits*, 462 N.Y.S.2d at 478 (O'Connor, J., concurring) (emphasis added). Thus, under New York law, all property obtained by Tanya and Vladimir during their marriage, with a few exceptions not relevant here, is marital property—regardless of who holds legal title—and is available for distribution by a New York court in a final judgment of divorce.

■ When the New York Legislature passed the equitable distribution law in 1980, it rejected the concept of "equal distribution," or community property, whereby each spouse obtains an equal interest in the property at the moment it becomes marital property. New York chose to leave the distribution of marital property to the discretion of the courts, based on factors listed in the statute and irrespective of the name in which title is held. *See* N.Y. DOM. REL. L. § 236. In that sense, an equitable distribution award is similar to the imposition of a constructive trust: It is a *remedy* available to the courts to ensure that traditional title principles do not prevent the courts from achieving equity between the parties to an action. A spouse without legal title has no

interest in marital property prior to obtaining a judgment creating such an interest, for the concept of marital property only exists "as an ancillary remedy to the dissolution of a marriage." *Leibowits*, 462 N.Y.S.2d at 473 (O'Connor, J., concurring). In New York, a spouse enforcing an equitable distribution award does not seek judicial recognition of an inchoate, prejudgment interest in the property. Rather, the spouse, like a judgment creditor, seeks to enforce an equitable remedy ordered in the judgment.

 In New York, a judgment cannot be enforced prior to entry:

> The granting of a judgment by a court is of no value to the judgment creditor until the judgment is "entered." Entry of the judgment is the first step towards enforcement of that judgment under the CPLR. "Entry" occurs when the clerk files the judgment after signing it.

New York Practice Series, *Enforcing Judgments and Collecting Debts in New York*, § 6:15 (citing N.Y. C.P.L.R. § 5016(a) and Haig, *Commercial Litigation in New York State Courts*, § 49.2). CPLR sections 5202 and 5203 lay out the steps that a judgment creditor must follow in order to obtain rights in a debtor's personal or real property, respectively. N.Y. C.P.L.R. §§ 5202, 5203 (1997). With respect to real property, save for a few exceptions not applicable here, a judgment does not give rise to a lien prior to entry, or "docketing," of the judgment with the county clerk in the county where the real property is located. *Id.* at § 5203(a). "It is from the moment of the docketing of a judgment in the county which is the situs of the real property that legal rights in the real estate of the debtor attach." *Nat'l Instalment Corp. v. Sacks*, 56 Misc.2d 346, 288 N.Y.S.2d 667, 669 (N.Y.Sup.Ct.1968) (citing *Hulbert v. Hulbert*, 216 N.Y. 430, 440, 111 N.E. 70 (N.Y.1916)). "Docketing"

occurs when the judgment is recorded by the clerk in books listing the surnames of judgment debtors alphabetically. N.Y. C.P.L.R. § 5203(a), Practice Commentaries at C5203:2. With respect to personal property, after entry of the judgment the creditor generally must "execute" on the property by delivering the final order to the sheriff of the county in which the property is located. N.Y. C.P.L.R. § 5202(a).

 "The basic rule of CPLR 5203(a) is that the priorities among competing judgment creditors are determined on the basis of a pure horse race: the first to docket his judgment in the county where the realty is located has full rights in the property, unless there is a surplus." Weinstein, Korn & Miller § 5203.09. Similarly, a judgment creditor who seeks a lien on personal property must be the first to execute or levy on the property or his effort to obtain a lien may be thwarted. *See In re Thriftway Auto Rental Corp.*, 457 F.2d 409, 411 (2d Cir.1972) (stating that under New York law, a private judgment "creates no lien at all upon personal property," but "merely enables a judgment creditor to obtain a lien through further action, e.g., as against a 'transferee' by delivery of an execution; as against another judgment creditor by levy" (internal citations omitted)).

 New York has long preferred a bright line rule whereby the party that first notifies all interested third persons of its judgment lien—either by docketing (real property) or execution (personal property)—takes priority. The rule serves not only to notify potential creditors and other interested parties of the existing lien, but also to permit the lienholder to rely on its interest in the property. It would be anomalous if this system existed with the caveat that a perfected judgment lien might be defeated by an unentered

equitable distribution award. Unless the equitable distribution award is entered, a potential judgment creditor has no means of discovering that the property upon which it seeks to levy is in fact no longer the property of the debtor. A mere judicial declaration of equitable distribution, without entry, cannot give a spouse an interest in property superior to that of a creditor (or in this case, a trustee) holding a valid judgment lien. Such a rule would blur the bright line that New York has created with sections 5202 and 5203 of the CPLR. Rights in equitable distribution, like judgment liens, vest no earlier than entry of the judgment by which they are created.

■ Tanya asserts, and the district court agreed, that an equitable distribution award vests upon the granting of an interest through the written decision of the state court, and that entry of that judgment is merely "ministerial" (i.e., unnecessary to its creation). The district court relied upon a line of matrimonial cases suggesting that the granting, rather than the entry, of a divorce judgment is the moment at which the divorce becomes final and the equitable rights of the now former spouse in the marital property are established. *See Estate of Agliata v. Agliata,* 155 Misc.2d 385, 589 N.Y.S.2d 236, 240 (N.Y.Sup.Ct.1992) ("[T]he right to equita-

ble distribution vests upon the *determination* of a court that a judgment of divorce is to be granted, and that actual entry *vel non* of a written judgment . . ., which is a purely ministerial act, is not essential to the vesting of that right."); *Jayson v. Jayson,* 54 A.D.2d 687, 688, 387 N.Y.S.2d 274 (N.Y.App.Div.1976) ("The entry of the judgment of divorce is a mere formality or ministerial act."); *Cornell v. Cornell,* 7 N.Y.2d 164, 165, 196 N.Y.S.2d 98, 164 N.E.2d 395 (1959) (holding that once a state court has granted a divorce judgment in a matrimonial case, the entry of the judgment thereafter is "ministerial").[2] Each of these cases, however, involves a claim between spouses or between one spouse and the other's estate. It may be the case that, *as between spouses,* actual entry of the divorce judgment is immaterial so long as a divorce has in fact been granted. Between spouses the dual policy concerns of notice and the ability of a judgment creditor to rely on its interest are absent because the spouses have had an opportunity to participate in the proceedings by which their respective rights in the property at issue have been determined. But *as between a spouse and a third party* (such as a judgment lien creditor), entry of the judgment is critical, under New York law, to cementing the spouse's interest in the property. *See In re Anjum,* 288 B.R. 72, 76 (Bankr.S.D.N.Y.

**2.** The district court also relied on *Rexnord Holdings, Inc. v. Bidermann,* 21 F.3d 522 (2d Cir.1994). In *Rexnord,* the district court granted the plaintiff's motion for summary judgment in an oral decision. The court stated, "I'm going to order that judgment be entered in favor of [debtor] in the amount of $12,946,748 principal and accrued interest . . . . So I'm going to endorse the original documents to that effect on this application . . . . I want to enter this today." *Id.* at 525. Later that same day debtor filed a Chapter 11 petition. The court clerk entered the judgment the next day. Debtor argued that the judgment should not have been entered be-

cause it violated the automatic stay in place as of the filing of the Chapter 11 petition. On appeal, this Court stated, "we do not believe that the simple and 'ministerial' act of the entry of a judgment by the court clerk constitutes the continuation of a judicial proceeding under section 362(a)(1)." *Id.* at 527. The question in *Rexnord* was whether the entry of a federal court judgment violated the automatic stay provisions of § 362, a matter of federal law. It did not involve the question here: whether, under New York law, the debtor had an interest in the property at the time the petition was filed.

2003) ("The courts have uniformly held that when a final judgment of divorce has not been entered at the time of the bankruptcy filing, the non-debtor spouse's rights may be no greater than that of a general unsecured creditor."); *In re Cole,* 202 B.R. 356, 360 (Bankr.S.D.N.Y.1996) ("If bankruptcy intervenes before the state court enters the [divorce] judgment, the trustee's status as hypothetical lien creditor cuts off the non-debtor spouse's inchoate rights in marital property, and leaves her with a general unsecured claim." (internal citation omitted)).

 Because Tanya's interest in the property did not completely vest until after the involuntary petition was filed the property is part of the bankruptcy estate. 11 U.S.C. § 541(a)(1). This is not to suggest that the state court decision was nullified by the subsequent filing of the petition. With respect to marital property, it is the exclusive province of the New York Supreme Court to adjudicate all rights, duties and entitlements as between spouses. *See* Siegel, N.Y. Prac. § 16 (4th ed.2006). To the extent that the state court ultimately establishes an equitable distribution award in favor of a non-debtor spouse after the debtor spouse has filed for bankruptcy, that award transforms the non-debtor spouse into a creditor of the bankruptcy estate within the meaning of 11 U.S.C. § 101(10). *See In re Palmer,* 78 B.R. 402, 406 (Bankr.E.D.N.Y.1987) ("The non-debtor spouse's claim is an entitlement against the debtor's estate, and thus she becomes one of the general unsecured creditors of the estate."); *In re Hilsen,* 100 B.R. at 711 (citing *Palmer* for the same proposition). It is the exclusive province of the bankruptcy court, however, to determine how the state court judgment will affect the distribution of property in the bankruptcy proceeding. *See* 11 U.S.C. § 541.

 It is possible to conclude, in this case, that Vladimir abused the bankruptcy process in his dealings with his spouse. The bankruptcy court, however, does not lack means to address any inequities that might arise as a consequence of acknowledging the Trustee's status as a judgment lien creditor. For example, "as courts of equity," federal bankruptcy courts have the power "to subordinate the claims of one creditor to those of others." *HBE Leasing Corp. v. Frank,* 48 F.3d 623, 634 (2d Cir.1995). The "broad equitable power" of bankruptcy courts "to disallow and reorder claims" has long been recognized in case law, beginning with the Supreme Court's opinion in *Taylor v. Standard Gas & Elec. Co.,* 306 U.S. 618, 59 S.Ct. 543, 83 L.Ed. 669 (1939). *HBE,* 48 F.3d at 634. That power is now codified in the Bankruptcy Code at 11 U.S.C. § 510(c).[3]

The bankruptcy court has already indicated that the district court's determination that the Consent Agreement was a fraudulent conveyance "may well factor in the determination of the respective priority to be afforded to the claims of Zuritta–Teks and Tanya Ostashko in the debtor's bankruptcy case." The district court's legal determination might not, standing alone, determine the priority of creditors in bankruptcy. *See HBE,* 48 F.3d at 634 (noting that, "[u]nlike the Bankruptcy Code," New York's fraudulent conveyance statute comprises "a set of legal rather than equitable doctrines"). Nonetheless, the bankruptcy court may consider whether or not participation by Zuritta–Teks or its predecessors in the transaction justifies the equitable subordination of its claims.

---

**3.** Section 510(c) permits the bankruptcy court, "under principles of equitable subordination, [to] subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest . . . ."

*See Kelleran v. Andrijevic,* 825 F.2d 692, 697 (2d Cir.1987) (Blumenfeld, J., dissenting) ("Under the doctrine of equitable subordination ... a bankruptcy court may subordinate a particular claim if it finds that the creditor's claims, while not lacking a lawful basis nonetheless results from inequitable behavior on the part of that creditor."); *see also Sure–Snap Corp. v. State Street Bank & Trust Co.,* 948 F.2d 869, 876 (2d Cir.1991) (noting that equitable subordination is appropriate, *inter alia,* when the subordinated claimant has engaged in inequitable conduct that injures competing claimants). By exercising its equitable powers, the bankruptcy court may thus " 'sift the circumstances surrounding any claim to see that injustice or unfairness is not done in administration of the bankruptcy estate.' " *Kelleran,* 825 F.2d at 697–98 (Blumenfeld, J., dissenting) (quoting *Pepper v. Litton,* 308 U.S. 295, 307–08, 60 S.Ct. 238, 84 L.Ed. 281 (1939)).

For the reasons set forth above, the district court judgment is VACATED and we direct the district court to REMAND this case to the bankruptcy court for further proceedings consistent with this opinion.