17-3209
*Pangea Capital Management, LLC v. Lakian*


UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

August Term, 2018

(Argued: September 18, 2018      Questions Certified: September 26, 2018)

Docket No. 17-3209
_____

PANGEA CAPITAL MANAGEMENT, LLC,

*Petitioner-Appellant*,

– v. –

JOHN R. LAKIAN,

*Respondent-Appellee*,

ANDREA LAKIAN,

*Intervenor-Appellee*.
_____

B e f o r e:

KATZMANN, *Chief Judge*, CHIN and LOHIER, *Circuit Judges*.
_____

Appeal from an order of the United States District Court for the Southern District of New York (Kaplan, *J.*) granting in part and denying in part petitioner-appellant Pangea Capital Management, LLC's motion for a writ of execution upon the proceeds from the sale of a property previously owned by appellees Andrea and John Lakian. Pangea, a judgment creditor of John, contends that the district court erred in declining to award it the entirety of the proceeds, arguing that its interest in the property took priority over an interest awarded to Andrea in a divorce judgment, and that the trust in which title to the property had been held was void as to John's creditors. Because Pangea's challenge raises questions of New York law for which no controlling decisions of the New York Court of Appeals exist, we CERTIFY questions to the Court of Appeals.

_____

CAITLIN L. BRONNER (Dean G. Yuzek, *on the brief*), Ingram Yuzek Gainen Carroll & Bertolotti, LLP, New York, NY, *for Petitioner-Appellant*.

John R. Lakian, *pro se*.

JUDITH R. RICHMAN (Joel Berger, *on the brief*), Sonnenfeld & Richman LLP, New York, NY, *for Intervenor-Appellee*.

_____

KATZMANN, *Chief Judge*:

This appeal requires us to decide whether a spouse's interest in real property, which was allocated to her first in a trust agreement (giving her a 50% interest) and then in a divorce judgment (giving her a 62.5% plus $75,000 interest), takes priority over a judgment creditor's interest in the same property, when the judgment creditor has docketed its judgment in the county where the

real property is located and the spouse has not. This determination hinges on an issue of state law for which there is no controlling decision of the New York Court of Appeals, and on which guidance from the Court of Appeals would be decisive.

The property in question in this case was previously owned by intervenor-appellee Andrea Lakian ("Andrea") and respondent-appellee John Lakian ("John"). Upon divorcing, Andrea and John stipulated that the property would be sold and that Andrea would receive 62.5% plus $75,000 of the net proceeds; their stipulation was incorporated into a divorce judgment entered by the New York Supreme Court, New York County. Soon thereafter, petitioner-appellant Pangea Capital Management, LLC ("Pangea") won an arbitration award against John, which was confirmed and reduced to a judgment. After docketing its judgment in the county where the property was located, Pangea moved for a writ of execution, seeking to execute upon all of the proceeds from the sale. The district court (Lewis A. Kaplan, *Judge*), in a thorough opinion, granted in part and denied in part the motion, holding that Pangea could execute only upon the share of the proceeds awarded to John in the divorce judgment, *i.e.*, 37.5% less $75,000.

On appeal, Pangea argues that it was entitled to execute upon all of the proceeds and that the district court's conclusion to the contrary was error. In evaluating Pangea's challenge, we must first determine whether, as Pangea asserts, Pangea's interest in the property took priority over the interest granted to Andrea in the divorce judgment because Andrea failed to docket the divorce judgment in the county where the property was located. If it did, we must then determine whether, as Pangea also asserts, the nature of the trust that held title to the property entailed that John remained the absolute owner of the property relative to his creditors during the Lakians' marriage. Because both of these issues turn on questions of state law for which no controlling decisions of the New York Court of Appeals exist, we certify, pursuant to 22 N.Y.C.R.R. § 500.27(a) and 2d Cir. R. 27.2(a), two questions to the Court of Appeals.

## BACKGROUND

### I.    The Property and the Trust

Andrea and John married in 1977. During their marriage they purchased, improved, and resold several properties. On December 4, 2002, they purchased a property on Shelter Island in Suffolk County, New York (the "Property"). The purchase price was $4,500,000, which Andrea and John funded using the

4

proceeds from the sale of another property that they had owned. They later spent more than $4,000,000 of their joint assets making improvements to the Property.

When they purchased the Property, title to it was placed in John's name alone, but shortly thereafter he transferred the Property to the GEMS II Realty Trust (the "Trust"). The Declaration of Trust (the "Declaration") provided that John was the trustee of the Trust, and the attached Schedule of Beneficiaries provided that Andrea and John were beneficiaries, each with a 50% interest. The Declaration further provided that the Trustees, namely John and his successors, "will hold any and all of the property that may be transferred to or acquired by them in their capacity as Trustees (hereinafter referred to as 'the Trust Premises') in trust for the purposes hereinafter contained." App. 226. Those purposes were expressly limited:

> The purposes for which the Trust is formed and the functions to be carried on by the Trustees are limited to holding the record legal title of the Trust Premises for the benefit of the Beneficiaries. The Trust shall not engage in any functions other than the holding of record legal title to the Trust Premises, and such functions as are necessarily incidental thereto and is intended to be merely a nominee trust, so-called, for Federal and State income tax purposes.

> Except as herein provided in the case of the termination of this Trust, the Trustees shall have no power to deal in or with the Trust Premises, except as directed in writing by all of the Beneficiaries.

5

App. 227–28. Rather, the beneficiaries of the trust were given "control of the management, operation and handling of the Trust Premises, and all matters related thereto." App. 228. Finally, the Declaration provided that the Trust "may be terminated at any time by the then Beneficiaries" and "may also be revoked and terminated at any time by all of the then Trustees." App. 229. In the event the Trust was terminated, the Declaration specified that "the Trust Premises shall automatically vest in the Beneficiaries hereof as tenants in common . . . in proportion to their respective interest[s]." App. 227.

## II. Procedural history

John joined Pangea, a small investment management firm started in 2008, as a co-managing member, and he led Pangea's primary investment vehicle. Pangea later accused John of defrauding the company and improperly diverting millions of dollars to himself. In June 2012, Pangea sued John in New York Supreme Court. That proceeding was discontinued in favor of binding arbitration.

Around the same time, the Lakians' marriage was ending. After discovering that John was having an affair, Andrea filed for divorce in New York Supreme Court in December 2013. On May 4, 2015, Andrea and John executed a

6

Stipulation of Settlement and Agreement (the "Stipulation") in order to settle their pending divorce proceedings. The Stipulation provided that the Property would be listed for sale; that John, as trustee of the Trust, would effectuate the transfer of title to the purchaser; and that the net proceeds from the sale "shall be divided so that the Wife receives 62.5% thereof *plus* $75,000 . . . and the Husband receives 37.5% thereof *less* $75,000 . . . ." App. 293 (emphases in original). On June 9, 2015, the New York Supreme Court issued a Judgment of Divorce (the "Divorce Judgment"), which incorporated the Stipulation by reference. The Divorce Judgment was entered on June 11, 2015. Andrea never docketed the Divorce Judgment in Suffolk County.

On January 5, 2016, the arbitration between John and Pangea resulted in an Amended Partial Final Arbitration Award in favor of Pangea (the "Award"). On February 3, 2016, Pangea filed a petition in the district court seeking to confirm the Award and reduce it to a judgment. At the same time, it moved for an order of attachment against the Property, which the district court granted. The district court confirmed the Award in a decision on November 9, 2016, and it entered a confirmation judgment in Pangea's favor in the amount of $14,452,193.22 (the "Confirmation Judgment") on November 22, 2016. Pangea docketed the

Confirmation Judgment with the clerk of Suffolk County on November 28, 2016. Thus, while the Divorce Judgment was entered before Pangea received the Confirmation Judgment, Pangea docketed its judgment first (since Andrea never docketed the Divorce Judgment).

On January 9, 2017, the district court so ordered a stipulation between Pangea, John, and Andrea that authorized the sale of the Property. That stipulation stated that it was intended to "maintain the *status quo*" and "not impair any party's rights, interests and priorities." App. 70. The Property was sold on February 13, 2017, and the net proceeds of $5,039,615.85 were deposited with the district court (the "Proceeds").

Pangea then moved for a writ of execution on all of the Proceeds pursuant to Federal Rule of Civil Procedure 69 and New York Civil Practice Law and Rules ("C.P.L.R.") 5236 and 5239. Andrea and John each cross-moved, pursuant to Federal Rule of Civil Procedure 64 and C.P.L.R. 6221, for an order awarding Andrea 62.5% plus $75,000 of the Proceeds. In an Opinion dated September 13, 2017, the district court granted Andrea's and John's cross motions and granted in part and denied in part Pangea's motion, ruling that Pangea could execute only upon the share of the Proceeds awarded to John in the Divorce Judgment (*i.e.*,

8

32.5% less $75,000 of the Proceeds). In the course of reaching this conclusion, the district court noted that the question of New York law raised by the motions had never been presented to the New York Court of Appeals, but that the district court was unable to certify that question. The Clerk of Court disbursed the Proceeds in the proportions specified by the district court: Pangea received $1,822,670.71, and Andrea received $3,237,784.52. This appeal followed.

## DISCUSSION

Pangea's challenge to the district court's order consists of two steps. First, Pangea contends that its interest in the Property takes priority over the interest awarded to Andrea in the Divorce Judgment because Pangea docketed the Confirmation Judgment, whereas Andrea never docketed the Divorce Judgment. If that were the case, then Pangea asserts that Andrea would not be entitled to 62.5% plus $75,000 of the Proceeds, but only to whatever interest in the Property she owned before the Divorce Judgment. Second (and assuming that it prevails as to the first issue), Pangea contends that, before the Divorce Judgment, Andrea had no interest in the Property that would take priority over liens against the Property by John's creditors, since the nature of the Trust entailed that John remained the absolute owner of the Trust with regard to his creditors. Each of

9

these issues turns on the interpretation of New York law. "We review the district court's interpretation of a state statute *de novo*." *Corsair Special Situations Fund, L.P. v. Pesiri*, 863 F.3d 176, 179 (2d Cir. 2017).[1]

## I.     The relative priority of Andrea's and Pangea's respective interests

The first issue raised by Pangea's challenge—whether Andrea was required to docket the Divorce Judgment—turns on the interaction of two statutes: Section 236 of New York's Domestic Relations Law ("D.R.L."), which governs the distribution of marital assets upon dissolution of a marriage, and C.P.L.R. 5203, which dictates the relative priority of judgment creditors who seek to execute against a judgment debtor's real property. Before turning to the parties' arguments, we briefly survey that statutory landscape.

---

[1] Although the record seems to reflect that the Trust continued to hold title to the Property after the Divorce Judgment was entered—since the Trust ultimately conveyed title to the Property to the buyer of the Property—the parties' arguments are based on the premise that the Divorce Judgment effectively allocated to Andrea an interest in the Property itself, rather than an interest in the Trust. We address those arguments as the parties make them, but we note that it may also be possible to view the Divorce Judgment as granting Andrea an increased interest in the Trust while the Trust continued to hold the real property interest in the Property. If the Court of Appeals were to accept our certification, it would of course be free to consider that alternate view and any implications thereof.

In 1980, New York revised the D.R.L. by adopting a system of "equitable distribution," which is based on a view of marriage as an "economic partnership." *McDermott v. McDermott*, 507 N.Y.S.2d 390, 396 (2d Dep't 1986). Under that system, all property acquired by either or both spouses during the marriage, "regardless of the form in which title is held," is deemed "marital property." N.Y. Dom. Rel. Law § 236(B)(1)(c). Upon dissolution of the marriage, marital property is equitably distributed by a court, *see id.* § 236(B)(5)(a) (providing that, in a divorce action, "[e]xcept where the parties have provided in an agreement for the disposition of their property . . . , the court . . . shall determine the respective rights of the parties in their separate or marital property, and shall provide for the disposition thereof in the final judgment"), or pursuant to an agreement between the spouses, *see id.* § 236(B)(3). Allocations of marital property effected by equitable distributions by courts pursuant to Section 236(B)(5)(a) and by separation agreements by parties pursuant to Section 236(B)(3) are treated similarly. *See Kaplan v. Kaplan*, 82 N.Y.2d 300, 307 (1993).

Spouses' individual interests in marital property remain inchoate during the marriage, up until the final judgment dissolving it: "At *no point prior to judgment* does [D.R.L. Section 236] create any contingent or present vested

11

interests, legal or equitable, by virtue of the parties' marital status . . . ." *Musso v. Ostashko*, 468 F.3d 99, 105 (2d Cir. 2006) (per curiam) (quoting *Leibowits v. Leibowits*, 462 N.Y.S.2d 469, 478 (2d Dep't 1983) (O'Connor, J., concurring)); *see also McDermott*, 507 N.Y.S.2d at 397 (describing a spouse's interest in marital property as "unenforceable and unallocated" before a divorce proceeding began, "inchoate" during the proceeding, and only "matur[ing] into a true ownership interest when the equitable distribution judgment terminate[s] the action").

The C.P.L.R. sets forth the requirements for a judgment creditor to enforce her judgment. To enforce a judgment, the judgment must first be entered, which "occurs when the clerk files the judgment after signing it." *Musso*, 468 F.3d at 106 (internal quotation marks omitted); *see also* N.Y. C.P.L.R. 5016(a). In addition, under C.P.L.R. 5203(a), in order for a judgment creditor to gain rights in the debtor's real property, she must docket the judgment "with the county clerk in the county where the real property is located." *Musso*, 468 F.3d at 106. "The basic rule of CPLR 5203(a) is that the priorities among competing judgment creditors are determined on the basis of a pure horse race: the first to docket his judgment in the county where the realty is located has full rights in the property, unless there is a surplus." *Id.* (internal quotation marks omitted). This "bright line rule

12

whereby the party that first notifies all interested third persons of its judgment lien . . . by docketing . . . takes priority" serves the policy goals of "notify[ing] potential creditors and other interested parties of the existing lien" and "permit[ting] the lienholder to rely on its interest in the property." *Id.*

Pangea contends that the docketing requirement in C.P.L.R. 5203(a) applies to an interest in real property awarded in a divorce judgment pursuant to D.R.L. Section 236. In other words, Pangea argues that the recipient of such an award is like a judgment creditor and therefore must docket the divorce judgment if her interest is to take priority over the interests of subsequent judgment creditors who docket their judgments. Applying that principle to the facts of this case, Pangea asserts that Andrea's failure to docket the Divorce Judgment before Pangea docketed the Confirmation Judgment means that Pangea's interest in the Property takes priority. However, Pangea cites no decisions from New York courts that adopt this view.

Rather, in support of its position, Pangea refers to our decision in *Musso*, in which, interpreting New York law, we held that marital assets that had been awarded to a wife, Tanya Ostashko, in a state court matrimonial proceeding were "nevertheless part of the husband's bankruptcy estate" where an

13

involuntary bankruptcy petition was filed "after the state court's decision but before the state court judgment [was] entered." *Id.* at 102. That was so, we concluded, "[b]ecause Tanya's interest in the property did not completely vest until after the involuntary petition was filed." *Id.* at 108. In the course of reaching that conclusion, we stated that "the enforcement of [an equitable distribution award] is no different than the enforcement of any other judgment," and that, under New York law, "the priority of judgment creditors is determined on the basis of the order in which judgments are docketed or executed." *Id.* at 102. These statements align with Pangea's view that divorce judgments are subject to the docketing requirements of C.P.L.R. 5203(a).

However, there is a notable (and potentially critical) difference between the facts underlying *Musso* and the facts in this case: in *Musso*, the state court matrimonial judgment had been neither entered nor docketed, whereas here the Divorce Judgment was entered but not docketed. Our holding in *Musso* therefore does not squarely control this case. Moreover, some statements in *Musso* indicate that the reason that Tanya's interest in the marital property did not vest in time was not that the matrimonial judgment was not docketed, but rather that it was not entered. We stated that "[a] mere judicial declaration of equitable

14

distribution, without *entry*, cannot give a spouse an interest in property superior to that of a creditor . . . holding a valid judgment lien. . . . Rights in equitable distribution, like judgment liens, *vest no earlier than entry of the judgment* by which they are created." *Id.* at 107 (emphases added); *see also id.* (stating that "entry of the judgment is critical, under New York law, to cementing the spouse's interest in the property" in relation to another creditor). Because it is not entirely clear whether the outcome in *Musso* followed from the failure to enter the matrimonial judgment or the failure to docket it, *Musso* does not dictate the result for us where, as here, a judgment pursuant to D.R.L. Section 236 is entered but not docketed.

Pangea also relies on an amendment to C.P.L.R. 5203 enacted in response to our decision in *Musso*. The amendment provides a limited exception to C.P.L.R. 5203(a)'s docketing requirement: if one receives a judicial award of an interest in real property, and the award is reduced to a judgment that is docketed within 30 days, then the judgment takes priority over a judicial lien created by a bankruptcy petition filed on or after the date the award issued. N.Y. C.P.L.R. 5203(c). In effect, the exception seems to establish a grace period for entry and docketing that is designed to thwart the strategic filing of bankruptcy petitions

15

upon the issuance of an award of ownership of an interest in real property. While it is undisputed that the exception does not apply in this case, its enactment appears to presuppose a particular understanding of C.P.L.R. 5203. A Memorandum in Support of Legislation that was appended to the relevant bill subscribes to the view that C.P.L.R. 5203(a)'s docketing requirement applies to judgments pursuant to D.R.L. § 236: it states that "docketing effectuates legal ownership and the docketing date determines the seniority of competing property interests," and so, on the facts of *Musso*, "[u]nder CPLR 5203(a), [the] Supreme Court's award of the marital home could not be enforced until docketed," Special App. 40. The scope of the exception in C.P.L.R. 5203(c) is consistent with that understanding: if only entry and not docketing were needed for an award to vest in circumstances like those present in *Musso*, then it would be odd to require not only the entry but also the docketing of an award within 30 days for the exception to apply. And yet, although these indications of the legislature's view of C.P.L.R. 5203 are informative, they do not, on their own, resolve the question before us.

Andrea, for her part, relies on lower state court decisions that reject Pangea's view. For example, in *Darling v. Darling*, the New York Supreme Court

16

addressed a judgment creditor's attempt to execute on property after entry of a divorce judgment awarding that property to a spouse, where the spouse had not taken steps to execute on the divorce judgment. 869 N.Y.S.2d 307 (Sup. Ct. 2008).[2] The *Darling* court distinguished our decision in *Musso*, since in *Darling*—as here—the divorce judgment had been entered. *Id.* at 316. Moreover, *Darling*, disagreeing with *Musso*, stated that "there is a material difference between the usual judgment creditor, seeking to collect a money judgment from any property owned by the judgment debtor, and the distributee under a divorce judgment, seeking possession of specific property awarded from the marital estate." *Id.* at 317. Accordingly, *Darling* held that an equitable distribution award renders the recipient spouse "a transferee as to the marital property distributed, rather than a judgment creditor, for purposes of [CPLR] Article 52," and that the spouse's interest vests upon entry of the divorce judgment at the latest. *Id.* at 318; *see also Rodriguez v. Sepe*, 908 N.Y.S.2d 854, 859 (Sup. Ct. 2010) (concluding case was "not

---

[2] The property at issue in *Darling* consisted of co-op shares, which are personal, not real, property under New York law. 869 N.Y.S.2d at 312-13.

a battle of judgment creditors" where judgment creditor sought to attach assets distributed to one spouse pursuant to a divorce judgment).[3]

While *Darling* suggests that New York courts might well reject Pangea's view, it remains the case that the parties have not cited, and we have not found, any controlling decisions from the New York Court of Appeals, or any decisions from the Appellate Division in analogous circumstances that indicate how the Court of Appeals would likely decide the issue presented by Pangea's first challenge. Accordingly, we certify the following question to the Court of Appeals: *If an entered divorce judgment grants a spouse an interest in real property pursuant to D.R.L. Section 236, and the spouse does not docket the divorce judgment in the county where the property is located, is the spouse's interest subject to attachment by a subsequent judgment creditor that has docketed its judgment and seeks to execute against the property?*

_____

[3] As a general matter, New York courts have stressed that the entry of a divorce judgment is the critical point at which previously inchoate rights to marital property mature into individual ownership interests. *See, e.g., Sinha v. Sinha*, 727 N.Y.S.2d 537, 539 (3d Dep't 2001) ("[M]arital property rights are determined upon the granting of a divorce . . . ."); *McDermott*, 507 N.Y.S.2d at 397 (finding that a right to a marital asset "matured into a true ownership interest when the equitable distribution judgment terminated the action"); *Rodriguez*, 908 N.Y.S.2d at 859 (finding that a right to a marital asset is "inchoate during the divorce, but that right matured upon the filing of the judgment of divorce").

## II.    The validity of the Trust as to John's creditors

Assuming that the first issue is decided in Pangea's favor, and that Pangea's interest therefore takes priority over the interest that Andrea was awarded in the Divorce Judgment, the next question is whether Andrea retained some lesser interest in the Property that Pangea cannot reach, specifically the 50% beneficial interest that the documents governing the Trust purported to grant her. Pangea contends that it should be able to reach the entirety of the Proceeds on the theory that the Trust is invalid with regard to John's creditors. This issue also turns on the interpretation and application of state statutes, this time New York's Estates, Powers and Trusts Law ("E.P.T.L.").

Pangea invokes two principles codified in the E.P.T.L. in support of its argument. First, "[w]here a creator reserves an unqualified power of revocation, he remains the absolute owner of the property disposed of so far as the rights of his creditors or purchasers are concerned." N.Y. Est. Powers & Trusts Law § 10-10.6. Second, "[a] disposition in trust for the use of the creator is void as against the existing or subsequent creditors of the creator." N.Y. Est. Powers & Trusts Law § 7-3.1(a). As noted above, John was the settlor, the trustee, and one of the two beneficiaries of the Trust. Accordingly, Pangea argues, under E.P.T.L.

19

Sections 10-10.6 and 7-3.1(a), John remained the absolute owner of the Property

and the Trust cannot shield it from his creditors.

In response, Andrea contends that the normal rules regarding revocable

and self-settled trusts do not apply, as the Trust was expressly designated as a

so-called "nominee trust." App. 227. She admits, however, that nominee trusts

are "unique to Massachusetts state law," and she has not cited any New York

decisions recognizing such trusts. Intervenor-Appellee's Br. 25.[4] Andrea also

argues that the Trust should be considered a passive trust under E.P.T.L. Section

7-1.2 because it does not assign any functions to the trustee except to hold title to

the Property. *See Matter of Gagliardi*, 55 N.Y.2d 109, 113 (1982) ("It is well and

long established that . . . because the instrument allocates no functions to the

trustee, a passive or naked trust is created."); *Ward v. Saranac Lake Fed. Sav. &*

*Loan Ass'n*, 369 N.Y.S.2d 540, 542 (3d Dep't 1975) ("A direction simply that

property is to be held or used, or that [it] is to be held in trust, for a named

person or persons . . . creates only a passive trust." (internal quotation marks

omitted)). If the Trust is passive, then the Property should vest directly in the

---

[4] Because Andrea has not argued that Massachusetts law governs the Trust, and because she makes arguments based on New York's trust law, we assume that New York law applies.

beneficiaries, leaving Andrea and John each with a 50% interest. *See Gagliardi*, 55 N.Y.2d at 113 ("[S]o long as identity of the beneficiary is clear, a passive trust automatically is executed by vesting the entire interest in the *res* in the [beneficiary]."). In that event, Andrea's 50% interest would be her property, not subject to attachment by John's creditors.

Pangea argues that the Trust cannot be passive because John, as trustee, possessed the unfettered right to revoke it. This argument finds some support in New York decisions. *See, e.g.*, *Ward*, 369 N.Y.S.2d at 542–43 (concluding that purported trust accounts "fail[ed] as passive" but that the purported trust property reverted to the estate of the settlor, in part because the settlor retained "absolute control" over whether to withdraw the property); *see also Campenello v. Conrow*, 485 N.Y.S.2d 469, 471 (Co. Ct. 1985) (rejecting the argument that instruments effected passive trusts because they "clearly evidence[d] retention of full power in the settlor-trustee to dispose of the property and to use and dispose of the proceeds thereof during his lifetime").

However, on this issue as well we have found no controlling decision of the Court of Appeals, nor any decision by any New York court addressing the effect of a purported nominee trust under New York law. Accordingly, we

21

conditionally certify to the Court of Appeals a second question, which need only be decided if the first question is decided in Pangea's favor: *If a settlor creates a trust solely for the purpose of holding title to property for the benefit of himself and another beneficiary, and the settlor retains the unfettered right to revoke the trust, does the settlor remain the absolute owner of the trust property relative to his creditors, or is the trust property conveyed to the beneficiaries?*

## III. Certification

"Although the parties did not request certification, we are empowered to seek certification *nostra sponte*." *Corsair*, 863 F.3d at 182–83 (quoting *Kuhne v. Cohen & Slamowitz, LLP*, 579 F.3d 189, 198 (2d Cir. 2009)). Pursuant to the New York Court of Appeals' rules, "[w]henever it appears . . . that determinative questions of New York law are involved in a case pending before [a federal circuit court] for which no controlling precedent of the Court of Appeals exists, the court may certify the dispositive questions of law to the Court of Appeals." 22 N.Y.C.R.R. § 500.27(a); *see also* 2d Cir. R. 27.2(a) ("If state law permits, the court may certify a question of state law to that state's highest court.").

Our decision to certify questions to the Court of Appeals is discretionary. *See Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 41–42 (2d Cir. 2010). In

22

deciding whether to exercise that discretion, we consider whether "the New York Court of Appeals has not squarely addressed an issue and other decisions by New York courts are insufficient to predict how the Court of Appeals would resolve it"; whether "the statute's plain language does not indicate the answer"; whether "a decision on the merits requires value judgments and important public policy choices that the New York Court of Appeals is better situated than we [are] to make"; and whether "the questions certified will control the outcome of the case." *Id.* at 42 (internal quotation marks omitted). Each of those factors weighs in favor of certification in this case.

First, as discussed above, the Court of Appeals has not decided the specific questions of New York law that this appeal raises, "[n]or have issues similar to those raised here been litigated in New York courts often enough that sufficient precedents exist for use to make a determination concerning their proper outcome." *Commodity Futures Trading Comm'n v. Walsh*, 618 F.3d 218, 231 (2d Cir. 2010) (internal quotation marks and brackets omitted). Second, because the questions in this case require reconciling different statutory provisions, the plain language of those provisions is not conclusive. Third, the resolution of the first question in this appeal may broadly impact interests in real property awarded in

23

equitable distribution judgments, and accordingly "[w]e believe that the New York Court of Appeals is better situated than we are to decide this issue given its greater familiarity with New York matrimonial litigation and the likely importance of the issue to New York domestic relations law." *Id.* Fourth, the answers to the questions will dictate the respective shares of the Proceeds to which Pangea and Andrea are entitled, thereby resolving this appeal and the parties' dispute.

Because those factors weigh in favor of certification, we certify the questions formulated above and restated below. We are not unsympathetic to the concern, raised by Andrea, that the further proceedings required by certification will impose additional burdens on her resources. However, we are confident that the Court of Appeals, if it chooses to accept our certification, will be in the best position to decide the questions in this case and will do so expeditiously, as is its usual practice.

## CONCLUSION

For the reasons stated, the Court hereby certifies the following questions to the New York Court of Appeals:

(1) If an entered divorce judgment grants a spouse an interest in real property pursuant to D.R.L. Section 236, and the spouse does not docket the divorce judgment in the county where the property is located, is the spouse's interest subject to attachment by a subsequent judgment creditor that has docketed its judgment and seeks to execute against the property?

(2) *If the answer to Question (1) is "no," then*: If a settlor creates a trust solely for the purpose of holding title to property for the benefit of himself and another beneficiary, and the settlor retains the unfettered right to revoke the trust, does the settlor remain the absolute owner of the trust property relative to his creditors, or is the trust property conveyed to the beneficiaries?

We invite the Court of Appeals to reformulate these questions as it sees fit or expand them to address any other issues of New York law that would assist this Court in determining whether Pangea may execute against all or only a specified portion of the Proceeds.

It is hereby ORDERED that the Clerk of this Court transmit to the Clerk of the New York Court of Appeals this opinion as our certificate, together with a complete set of briefs, appendices, and the record filed in this case by the parties. This panel retains jurisdiction for purposes of resolving this appeal once the New York Court of Appeals has responded to our certification.

## CERTIFICATE

The foregoing is hereby certified to the New York Court of Appeals pursuant to 22 N.Y.C.R.R. § 500.27(a) and 2d Cir. R. 27.2(a), as ordered by the United States Court of Appeals for the Second Circuit.