State of New York

OPINION

This opinion is uncorrected and subject to revision
before publication in the New York Reports.

No. 53
Pangea Capital Management, LLC,
     Appellant,
       v.
John R. Lakian,
      Respondent,
Andrea Lakian,
     Intervenor-Respondent.

Caitlin L. Bronner, for appellant.
Judith R. Richman, for intervenor-respondent.

WILSON, J.:

The United States Court of Appeals for the Second Circuit has certified the

following question to us:

If an entered divorce judgment grants a spouse an interest in real property pursuant

to Domestic Relations Law § 236, and the spouse does not docket the divorce

- 1 -

judgment in the county where the property is located, is the spouse's interest subject to attachment by a subsequent judgment creditor that has docketed its judgment and seeks to execute against the property?

We answer that question in the negative.[1]

I

The relevant facts are more fully set forth in the opinions of the federal courts (see Pangea Capital Mgmt., LLC v Lakian, 906 F3d 1, 3-5 [2d Cir 2018]; Pangea Capital Mgmt., LLC v Lakian, 2017 US Dist LEXIS 149278, *2-8 [SD NY Sep 13, 2017, No. 16-cv-0840 (LAK)]); we summarize them here for context. John and intervenor-respondent Andrea Lakian were married in 1977. In 2002, they purchased a home on Shelter Island, Suffolk County, for $4.5 million. Title to the property was recorded in John's name and immediately transferred to a trust, for which John was the sole trustee and each spouse was a 50% beneficiary as tenant in common. Under the trust agreement, the trustee maintained the power to "revoke[] and terminate[]" the trust. In 2013, Andrea commenced an action for divorce in New York County. The divorce was finalized in 2015, with a judgment entered on June 11, 2015 that incorporated by reference an agreement that settled all issues, including providing for the sale of the Shelter Island property. Under the settlement,

---

[1] The Second Circuit posed a second question. We do not address that question because, as the Second Circuit indicated, our answer to the first question renders the second question immaterial to the disposition of this case.

Andrea would receive 62.5% of the proceeds plus another $75,000 and John would receive the balance.

In 2012, appellant Pangea Capital Management, LLC brought an action against John. Pangea, John's former employer, alleged that he and a co-worker (with whom he was romantically involved) had defrauded the company by diverting millions of dollars to themselves. Pangea voluntarily discontinued that action in favor of arbitration. The arbitrator ruled in Pangea's favor on January 6, 2016, and Pangea subsequently brought an action in federal court to enforce the $14 million arbitral award against John. Pangea sought and obtained an order of attachment on the Shelter Island property. Several months later, John asked the Federal District Court to modify the order of attachment to permit the sale of the home. The court allowed Andrea to intervene and the parties agreed to the sale and further agreed that the proceeds, totaling over $5 million, would be deposited with the Clerk of the Court while the dispute over Pangea's claim to the proceeds was litigated. The parties also agreed that their rights to the proceeds would constitute the "cash equivalent" of their rights in the Shelter Island property. During this time, the Federal District Court confirmed the $14 million arbitral award against John and entered a judgment in Pangea's favor in November 2016, which Pangea promptly docketed.

Andrea contends that, pursuant to the terms of the divorce settlement, she is entitled to 62.5% of the sale proceeds, plus $75,000. Pangea argues that, because it docketed its judgment before Andrea docketed her judgment of divorce in Suffolk County, CPLR 5203 gives Pangea priority over Andrea with respect to the Shelter Island property. Under

section 5203, when two or more judgment creditors are attempting to satisfy their judgments against real property owned by the debtor, priority goes to the first judgment creditor to docket a judgment in the county where the realty is located, regardless of whose judgment was first obtained. Pangea contends that Andrea's divorce judgment rendered her a judgment creditor; therefore, because Pangea docketed its judgment in Suffolk County and she did not, her claim to the property is subordinate to Pangea's.

Pangea further contends that its judgment can be satisfied against the entire trust corpus, not just John's 50 percent share prior to the divorce or John's approximately 36% share post-divorce, because, as trustee with the power of revocation, John was the "absolute owner" of the trust, and the trust is void as against creditors under New York trust law. Andrea counters that her equitably distributed share of the trust corpus – 62.5% plus $75,000 – was fixed and vested upon entry of the divorce judgment, regardless of her and John's interests in the trust corpus prior to the divorce. Accordingly, she contends she is not a judgment creditor of John.

The Federal District Court agreed with Andrea, holding that the judgment of divorce did not transform Andrea into a judgment creditor of her husband, but rather worked an equitable distribution of their marital assets in which, until the entry of the divorce judgment, both spouses had inchoate and indivisible ownership interests. Pangea appealed to the United States Court of Appeals for the Second Circuit, which certified the aforementioned question of New York law to us.

II

CPLR 5203 (a) concerns "Priority and lien on docketing judgment," and provides, in relevant part:

> "No transfer of an interest of the judgment debtor in real property, against which property a money judgment may be enforced, is effective against the judgment creditor either from the time of the docketing of the judgment with the clerk of the county in which the property is located until ten years after filing of the judgment-roll, or from the time of the filing with such clerk of a notice of levy pursuant to an execution until the execution is returned."

Under Domestic Relations Law § 236 (B) (1) (c), marital property is "all property acquired by either or both spouses during the marriage and before the execution of a separation agreement or the commencement of a matrimonial action, regardless of the form in which title is held."  Andrea had an interest in that marital property; Domestic Relations Law § 236 (B) (5) (c) also provides that marital property "shall be distributed equitably between the parties" in the event of divorce.  More specifically, "the court . . . shall determine the respective rights of the parties in their separate or marital property, and shall provide for the disposition thereof in the final judgment" (Domestic Relations Law § 236 [B] [5] [a]).  Thus, legal rights to specific marital property vest upon the judgment of divorce, with "inchoate rights" becoming "actual ownership interests by virtue of [an] equitable distribution judgment[]" (McDermott v McDermott, 119 AD2d 370, 379 [2d Dept 1986]; see also Kaplan v Kaplan, 82 NY2d 300, 305-306 [1993] [upon divorce, "a former spouse is now understood to have acquired an independent ownership interest in any 'marital property' acquired during the marriage and prior to separation or divorce"]).

Pangea's conception of Andrea as judgment creditor is utterly incompatible with our legislature's dramatic revision of the Domestic Relations Law in 1980. By incorporating the concept of "marital property" into Domestic Relations Law § 236, "the New York Legislature deliberately went beyond traditional property concepts when it formulated the Equitable Distribution Law" (O'Brien v O'Brien, 66 NY2d 576, 583 [1985]). Under that statute, both "spouses have an equitable claim to things of value arising out of the marital relationship" (id.). Marital property "hardly fall[s] within the traditional property concepts because there is no common-law property interest remotely resembling marital property" (id.). The equitable distribution resulting from the dissolution of a marriage is "based on the premise that a marriage is, among other things, an economic partnership to which both parties contribute as spouse, parent, wage earner or homemaker" (id. at 585). The legislative reform "recognized that the marriage relationship is also an economic partnership" (Majauskas v Majauskas, 61 NY2d 481, 489 [1984] [citations omitted]). Marital assets are not owned by one spouse or another, and the dissolution of a marriage involving the division of marital assets does not render one ex-spouse the creditor of another. Courts are empowered "not only to make an equitable disposition of marital property between [the spouses], but also to make a distributive award in lieu of or to supplement, facilitate or effectuate the division or distribution of property where authorized

in a matrimonial action, and payable in a lump sum or over a period of time" (id.
[quotations "omitted]).[2]

## III

Andrea therefore cannot properly be considered a judgment creditor of John. Thus,

CPLR 5203 (a), by its plain terms, has no application here, and Pangea can claim no

priority. Although Pangea argues that both subsections (a) and (c) of section 5203 require

Andrea to docket her judgment for it to be enforceable, the clear language of those

provisions says otherwise. Subsection (a) applies to transfers of the interest of a judgment

debtor in real property; the equitable distribution of Andrea's share was not the transfer of

the interest of a judgment debtor to a judgment creditor. Subsection (c) concerns only the

priority given to a judgment creditor as against a lien created by a petition in bankruptcy,

which is irrelevant here.

Abandoning the statutory language, Pangea places substantial weight on the Second

Circuit's decision in Musso v Ostashko (468 F3d 99 [2d Cir. 2006]) and on our legislature's

reaction to that decision by enacting CPLR 5203 (c). Neither supports Pangea's position.

Turning first to Musso, it has no application here. In Musso, Tanya Ostashko obtained a

decision in her matrimonial action, awarding her certain assets. Her husband's creditors

---

[2] Of course, in some situations one spouse or ex-spouse might be a judgment creditor as to the other. For example, one spouse may obtain a money judgment against the other spouse pursuant to Domestic Relations Law § 244. No such circumstance is present here and, in answering the certified question posed we have no occasion to decide whether a spouse seeking to enforce a section 244 judgment is a judgment creditor of the other spouse.

immediately filed an involuntary bankruptcy petition against her husband before the judgment was entered, and the Second Circuit held that because the divorce judgment had not been entered, the bankruptcy petition took priority, and all the marital assets were within the bankruptcy estate. Musso addresses a question not present here: when an award distributing marital assets has been made, but a bankruptcy petition is filed against a spouse before the divorce judgment is entered, do all the marital assets become part of the bankruptcy estate?

Pangea relies on Musso's statement that "under New York law an equitable distribution award is a remedy, and the enforcement of that remedy is no different than the enforcement of any other judgment" (468 F3d at 102). That statement is dicta because "the final judgment of divorce was neither signed nor entered" in Musso (id. at 104). Whether a judgment of divorce is comparable to a money judgment held by a creditor was not before the court, because Ms. Ostashko had not yet obtained an entered judgment of divorce when the bankruptcy petition was filed.[3]    As explained previously, that dicta did not accurately convey New York law because an entered judgment of divorce that distributes marital property is not like a money judgment of a judgment creditor.[4]  In any event, this Court is not obligated to follow such a statement on a matter of state law.

---

[3] Federal bankruptcy law declares that, as of the filing of a bankruptcy petition, the trustee is a perfected lien creditor under state law for all of the debtor's assets (id. at 102 [citing 11 USC § 544]).

[4] As the Federal District Court noted (see Pangea Capital Mgt., 2017 US Dist LEXIS 149278 at *21-22), our state trial courts have followed the Domestic Relations Law, not Musso's dicta, in granting priorities without regard to CPLR 5203 (see e.g. Darling v

As Pangea points out, the legislature reacted swiftly to <u>Musso</u> by adding subsection

(c) to CPLR 5203.  That subsection reads:

> "Notwithstanding any other provision of law, where a court makes an oral or written
> determination on the record awarding ownership of an interest in real property, and
> a judgment effectuating such determination is docketed with the clerk of the county
> in which such property is located not later than thirty days thereafter, such judgment
> shall be deemed entered and docketed on the day immediately preceding the date of
> such determination solely for purposes of establishing the priority thereof against a
> judicial lien on such property created upon the simultaneous or later filing of a
> petition in bankruptcy pursuant to the United States bankruptcy code, as amended."

Although Pangea points to language in an Assembly Memorandum in Support of

Legislation evidencing that the legislature may have taken <u>Musso</u>'s dicta for a holding, that

Memorandum clearly specifies that "the problem this measure seeks to redress [] is that

losing parties in such cases can file a strategic bankruptcy petition during this window to

delay if not functionally nullify the property award"   (New York State Assembly

Memorandum in Support of Legislation, Bill Jacket, L 2010, ch 427).  No bankruptcy filing

is involved here and the Assembly Memorandum was explicit that CPLR 5203 (c) applies

only in the bankruptcy context: "This technical amendment would have no effect on any

other property interests: it would not alter any other lien or its priority, and thus would not

---

<u>Darling</u> 22 Misc 3d 343 [Sup Ct, Kings County 2008]; <u>Rodriguez v Sepe</u> 29 Misc 3d 1011 [Sup Ct, Westchester County 2010]).  In addition, federal and bankruptcy court decisions both before and after <u>Musso</u> was decided treat the entry of a divorce judgment as the moment that ex-spouse's separate property interests in formerly marital property become vested, for the purpose of determining which assets may be included in the bankruptcy estate (<u>see e.g.</u> <u>Charles Schwab & Co., Inc. v Makowska</u>, 999 F Supp 2d 459, 463-464 [SD NY 2014]; <u>In re Bellafiore</u>, 492 BR 109, 116 [ED NY 2013]; <u>In re Anjum</u>, 288 BR 72, 76 [SD NY 2003]; <u>In re Cole</u>, 202 BR 356, 360 [SD NY 1996]; <u>In re Potter</u>, 159 BR 672, 675 [ND NY 1993]).

cast doubt on title or the alienation of real property in any respect" (New York State Assembly Memorandum in Support of Legislation, Bill Jacket, L 2010, ch 427). [5]

IV

Accordingly, the judgment of divorce was, as the Federal District Court explained, "a final settling of accounts" between marital partners with an equitable interest in all marital property (Pangea Capital Mgt., LLC v Lakian, 2017 US Dist LEXIS 149278, at *23 [SDNY Sep. 13, 2017, No. 16-cv-0840 (LAK)]).  Because the judgment of divorce did not render Andrea a judgment creditor of John (likewise, it did not render John a judgment creditor of Andrea), Andrea was not subject to the docketing requirements of CPLR 5203.

For these reasons, the first certified question should be answered in the negative and the second certified question not answered.

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

Following certification of questions by the United States Court of Appeals for the Second Circuit and acceptance of the questions by this Court pursuant to section 500.27 of this Court's Rules of Practice, and after hearing argument by counsel for the parties and consideration of the briefs and record submitted, first certified question answered in the negative and second certified question not answered.  Opinion by Judge Wilson.  Chief Judge DiFiore and Judges Rivera, Stein, Fahey, Garcia and Feinman concur.

Decided June 25, 2019

---

[5] To the extent Pangea contends that the docketing of a divorce judgment affecting title to real property should be required in order to put third-party transferees on notice, we note that the legislature has included a separate notice mechanism in the Domestic Relations Law (see Domestic Relations Law § 234).